UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RODRIGUEZ WHORTON,

        Petitioner,

                                   CASE NO. 2:10-CV-13902

v.                                JUDGE LAWRENCE P. ZATKOFF
                                MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     C.     *Procedural Default (Claims IV-VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.     *Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.     *Cause and Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
               a.  Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
               b.  Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          3.     *Fundamental Miscarriage of Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     E.     *Involuntary Statement (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     F.     *Other Acts Evidence (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     G.     *Sufficiency of the Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
               a.  Resisting/Obstruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
               b.  Stealing/Retaining Financial Transaction Device . . . . . . . . . . . . . . . . . . . . . . 31
     H.     *Jury Instructions (Claim X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
     I.     *Sentencing Claims (Claims VIII & XII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
          1.     *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          2.     *Inaccurate Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          3.     *Equal Protection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

[1]By Order entered this date, Paul Klee has been substituted in place of Kenneth McKee as the proper respondent in this action.

|        | 4. | *Judicial Factfinding* ................................................ | 42 |
| J.     |    | *Ineffective Assistance of Counsel (Claims VII-XI)* ................................. | 46 |
|        | 1. | *Clearly Established Law* ................................................ | 46 |
|        | 2. | *Trial Counsel* ..................................................... | 48 |
|        |    | a. Hearsay/Confrontation Challenge ...................................... | 48 |
|        |    | b. Jury Selection ...................................................... | 51 |
|        |    | c. Jury Instruction, Sentencing, and Prosecutorial Misconduct ................. | 53 |
|        | 3. | *Appellate Counsel* ................................................. | 54 |
| K.     |    | *Recommendation Regarding Certificate of Appealability* ............................ | 55 |
|        | 1. | *Legal Standard* ................................................... | 55 |
|        | 2. | *Analysis* ........................................................ | 56 |
| L.     |    | *Conclusion* ....................................................... | 57 |
| III.   |    | NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... | 58 |

\*      \*      \*      \*      \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Rodriguez Whorton is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

2.    On March 16, 2006, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; stealing or retaining a financial transaction device without consent, MICH. COMP. LAWS § 750.157n(1); resisting or obstructing a police officer, MICH. COMP. LAWS § 750.81d(1); and two counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Oakland County Circuit Court. On April 19, 2006, he was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 11½-40 years' imprisonment on the armed robbery conviction, 3-7½ years' imprisonment on the felon in possession conviction, and 1½-6 years' imprisonment on the financial transaction device conviction. Petitioner was also sentenced

2

to a mandatory consecutive term of two years' imprisonment on the felony-firearm convictions.

       3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

    I.    THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE PRE-TRIAL DEFENSE MOTION TO SUPPRESS MR. WHORTON'S CUSTODIAL STATEMENT TO THE POLICE, AS THE <u>WALKER</u> HEARING RECORD SHOWS THAT THE STATEMENT WAS INVOLUNTARY AND COERCED AND OBTAINED IN PART AS A RESULT OF THE APPARENT THREATS AND PROMISES OF LENIENCY IN EXCHANGE FOR DEFENDANT'S COOPERATION.

    II.    DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF EVIDENCE OF ANOTHER, UNRELATED ARMED ROBBERY THAT WAS UNCONNECTED TO THE INSTANT OFFENSE AND IRRELEVANT TO ANY PROPER PURPOSE UNDER MRE 404(B).

    III.    THE EVIDENCE IS INSUFFICIENT TO SUSTAIN DEFENDANT'S CONVICTIONS OF RESISTING AND OBSTRUCTING A POLICE OFFICER AND STEALING/RETAINING A FINANCIAL TRANSACTION DEVICE WITHOUT CONSENT.

Petitioner also filed a *pro se* supplemental brief, raising three additional claims:

    I.    WHETHER DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL FOR THE NUMEROUS REASONS SET FORTH BELOW.

    II.    DEFENDANT'S CONVICTION FOR (2) COUNTS OF FELONY FIREARM AND (1) COUNT OF FELON IN POSSESSION OF A FIREARM VIOLATES HIS CONSTITUTIONAL RIGHT NOT TO BE TWICE PUT IN JEOPARDY UNDER THE DOUBLE JEOPARDY CLAUSE.

    III.    WHETHER DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE JURY WAS ABLE TO CONSIDER EVIDENCE THAT WAS NEVER PROPERLY ADMITTED INTO EVIDENCE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Whorton*, No. 270607, 2007 WL 4125315 (Mich. Ct. App. Nov. 20, 2007) (per

curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising the three claims raised by counsel in the court of appeals but not including the three claims raised in his *pro se* supplemental brief.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Whorten*, 480 Mich. 1137, 746 N.W.2d 79 (2008).

5.     Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     COUNSEL FAILED TO INVESTIGATE AND PRESENT A VALID ISSUE OF CONFRONTATION UNDER THE UNITED STATES VI AMENDMENT RIGHT UNDER CRAWFORD V. WASHINGTON, DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL/APPELLATE COUNSEL.

     A.     THE ARGUMENTS OF THE PROSECUTOR WERE IMPROPER.

II.     A MANIFEST INJUSTICE OCCURRED WHEN THIS COURT FAILED TO INVESTIGATE AND RULE IN PLAIN ERROR AS SET FORTH IN CARINES, FRANCISCO, AND KIMBLE, SUPRA, WHERE PRV-4, PRV-5, AND OV-4 WERE MIS-SCORED WHILE TRIAL/APPELLATE COUNSEL FAILED TO PRESENT THE ERRORS DEPRIVED DEFNEDANT-APPELLANT OF HIS RIGHT TO BE SENTENCED BASED UPON ACCURATE INFORMATION.

III.     DEFENDANT-APPELLANT WAS DEPRIVED OF HIS LIBERTY WHERE TRIAL COUNSEL FAILED HIM CONSIDERABLY WHERE HE FAILED TO USE HIS PEREMPTORY CHALLENGES TO EXCUSE KNOWN BIAS[ED] JURORS WHERE SEVERAL JURORS ACKNOWLEDGED PERSONAL BIAS DURING VOIR DIRE.

IV.     DEFENDANT-APPELLANT WAS PREJUDICED BY THE TRIAL JUDGE WHERE THE TRIAL JUDGE ERRED IN READING THE WRONG JURY INSTRUCTION AND THEN TRYING TO CORRECT THE ERROR BY RE-READING THE CORRECT INSTRUCTIONS AFTER THE PREJUDICE HAD OCCURRED AND COUNSEL'S INABILITY TO OBJECT WAS INEFFECTIVE ASSISTANCE OF COUNSEL.

V.     DEFENDANT-APPELLANT REFERENCES TO THE RECORD AND

4

SUPPORTING FACTS DEMONSTRATE THAT THE FAILURE OF HIS TRIAL/APPELLATE COUNSEL, AS SET FORTH BELOW, TO RAISE THE ISSUES PRESENTED IN THIS RULE 6.500 ACTION CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL AND SATISFIES THE REQUIREMENT THAT HE SHOW "CAUSE" AND "PREJUDICE" UNDER COURT RULE 6.508(D)(3)(a).

On March 31, 2009, the trial court denied the bulk of petitioner's motion for relief from judgment, concluding that he was not entitled to relief on any of his claims, except for the challenge to the sentencing guideline scoring. With respect to that issue, the court ordered the prosecutor to file a response. *See People v. Whorton*, No. 2005-205410-FC (Oakland County, Mich., Cir. Ct. Mar. 31, 2009). The record before this Court does not include the trial court's subsequent ruling on that issue, and neither party provides any information regarding the sentencing issue. Presumably, because petitioner was not resentenced, the trial court also denied relief on this issue, and the state court docket sheet includes an entry dated June 18, 2009, denying petitioner's motion for relief from judgment. Petitioner subsequently filed an application for leave to appeal in the Michigan Court of Appeals, raising the five claims that he raised in the trial court as well as an additional claim that equal protection required petitioner to be resentenced pursuant to *People v. Cajos*. The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Whorton*, No. 294629 (Mich. Ct. App. Dec. 3, 2009). The Michigan Supreme Court denied petitioner's application for leave to appeal that decision in a standard order, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Whorton*, 487 Mich. 852, 784 N.W.2d 208 (2010).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 30, 2010. As grounds for the writ of habeas corpus, he raises the twelve claims that

5

he raised in the state courts.[2]

7.      Respondent filed his answer on May 25, 2011.  He contends that petitioner's fourth through sixth claims are barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims are either without merit or not cognizable on habeas review.

8.      Petitioner filed a reply to respondent's answer on August 9, 2011.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from a robbery of several students at Lawrence Technological University in Southfield, Michigan.  As summarized by the Michigan Court of Appeals:

> Several students at Lawrence Technological University arrived outside their dormitory early one morning after a Halloween party and were accosted by three or four armed men who demanded their valuables.  After taking money, credit cards, and some personal items, the men got into a vehicle and drove away.  The victims notified the police and provided a description of the vehicle.  The police quickly located a vehicle matching the description and pursued it, ultimately forcing the vehicle off the road.  The suspects fled on foot, and one of the officers saw defendant drop an object that was later identified as a handgun.  Defendant was discovered hiding in a garbage can or "mini dumpster" in a backyard near the abandoned vehicle.  The police arrested defendant and discovered several credit cards and cellular phones.

*Whorton*, 2007 WL 4125315, at *1.  At trial Adam Phillips, Carla Edwards, James Burns, and Amy Blankenship, the four victims, testified about the circumstances of the robbery.  *See* Trial Tr., Vol. I, at 175-278.  Their testimony regarding the circumstances of the crime was generally consistent, however only Phillips testified that he could identify petitioner.  *See id.* at 181, 187.

Officer Lawrence Porter of the Southfield Police Department testified that he was dispatched to Lawrence Tech and, while on 7 Mile Road, saw a vehicle with four males that matched the

---

[2]Petitioner's eleventh claim, asserting that counsel's ineffectiveness constitutes cause for his procedural default, does not raise an independent ground for relief.  Accordingly, it is discussed below only in the context of respondent's procedural default argument, and is not independently analyzed as a substantive basis for habeas relief.

description of the vehicle given by the victims.  He made a u-turn to follow the vehicle, and it immediately sped up.  He pursued, and eventually rammed the vehicle, bringing it to a stop.  The individuals exited the vehicle, at which time he saw petitioner throw something to the ground.  The object was a pistol that was recovered after the suspects had been arrested.  He took two of the men in the car into custody, and the police searched for the other two.  He was notified that someone was found hiding in a garbage can approximately 70-80 feet from where the vehicle came to a stop. Petitioner would not submit to handcuffing and stated, "I didn't rob anyone."  An inventory search of petitioner yielded credit cards, a few cell phones, keys, and money.  *See id.*, Vol. II, at 288-345. Mark Labrosse, an evidence technician, assisted in the arrest of petitioner.  Labrosse testified that petitioner struggled when the officers tried to arrest him.  Labrosse recovered two cell phones and credit cards that belonged to Eva Williams.  A gun was found near the vehicle, and the vehicle contained several purses and wallets.  *See id.* at 347-79.

Detective Christopher Helgert testified that he questioned three of the suspects, including petitioner.  After informing petitioner of his *Miranda* rights, Helgert took a statement from petitioner.  Petitioner denied being an active participant in the robberies.  Petitioner stated that he had been picked up by the three men, and they drove around while they were discussing robbing someone.  The men told petitioner that the vehicle was stolen.  They approached some "white people" and robbed them.  During the robbery, he was on the phone and acted as a lookout. Petitioner denied having a gun.  He admitted that he ran from the vehicle, but denied hiding in a garbage can.  *See id.* at 400-65.

C.    *Procedural Default (Claims IV-VI)*

Respondent first contends that petitioner's fourth, fifth, and sixth claims are barred by

petitioner's procedural default in the state courts.  The Court should agree.

    1.    *Default*

Respondent contends that petitioner's fourth through sixth claims are barred by petitioner's procedural default of these claims in the state courts.  These claims were raised in petitioner's supplemental brief on direct appeal in the Michigan Court of Appeals, but were not raised further in petitioner's application for leave to appeal to the Michigan Supreme Court.  Because they were not raised in the Michigan Supreme Court, respondent argues, the claims are unexhausted.  And because there is now no further avenue for review of these claims, respondent continues, the claims are now considered defaulted.  The Court should agree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").  Habeas review of a defaulted claim is barred "unless the habeas petitioner can show

'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).  Further, the federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law.  *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)).  Further, the petitioner must fairly present the claim at each level of state court review.  *See O'Sullivan*, 526 U.S. at 845-47.

Here, respondent contends that petitioner's claims are procedurally defaulted because they have not been exhausted, and there is no further avenue in the state courts in which petitioner could exhaust the claims.  In *Coleman v. Thompson*, *supra*, the Supreme Court suggested in dicta that where a petitioner has failed to exhaust his claims but would find those claims barred if later

presented to the state courts, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman*, 501 U.S. at 735 n.*.  Although the *Coleman* footnote was dicta, it has subsequently been applied by both the Supreme Court and the Sixth Circuit.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995) (per curiam).  Where no further avenues to present a claim exist, the claim is deemed technically exhausted, and the question becomes solely whether the claim is barred by a procedural default.  *See Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006).

Here, petitioner did not exhaust his fourth through sixth habeas claims because he did not assert them in his application for leave to appeal in the Michigan Supreme Court, and thus did not raise them at each level of the state review process.  Further, he did not raise these claims in his motion for relief from judgment.  And because he has already filed a motion for relief from judgment challenging his convictions, he may not bring a second motion raising the unexhausted claims.  The Michigan Court Rules explicitly provide that "one and only one motion for relief from judgment may be filed with regard to a conviction."  MICH. CT. R. 6.502(G)(1).[3]  Thus, there is no further state court avenues of relief available for petitioner to pursue his claims.  His claims are therefore technically exhausted, but defaulted.  Accordingly, review of the claims is barred unless petitioner is able to meet one of the two exceptions permitting review of procedurally defaulted claims.

2.    *Cause and Prejudice*

---

[3]The rule contains an exception for claims based on "a retroactive change in the law" or "new evidence that was not discovered before the first motion."  MICH. CT. R. 6.502(G)(2).  Petitioner's claims are not based on any new, retroactively applicable law, or on any newly discovered evidence.

*a. Cause*

The first exception to the procedural default rule is the cause and prejudice exception.  Under this exception, review of an otherwise barred claim is allowed if petitioner is able to demonstrate cause for, and prejudice attributable to, his default.  *See Coleman*, 501 U.S. at 750; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also*, *Coleman*, 501 U.S. at 753. Petitioner asserts that appellate counsel was ineffective for failing to raise his motion for relief from judgment claims on direct appeal, but respondent does not contend that these claims are defaulted. Petitioner does not assert that counsel was ineffective for failing to file an application for leave to appeal in the Michigan Supreme Court or for failing to advise him to include his three *pro se* claims in that application for leave to appeal, nor could he.

As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment.  *See id*. Any failure of counsel in connection with petitioner's appeal to the Michigan Supreme Court cannot amount to a violation of the Sixth Amendment, and thus cannot constitute cause to excuse petitioner's procedural default, because at that point petitioner had no constitutional right to counsel. Under Michigan law, a defendant may seek an appeal in the Michigan Supreme Court; however, such an appeal is discretionary.  *See* MICH. CT. R. 7.302.  A defendant has no constitutional right to counsel in pursuing such a discretionary appeal, and thus counsel's ineffectiveness in pursuing

11

petitioner's discretionary appeal cannot constitute cause to excuse his procedural default.  *See Coleman*, 501 U.S. at 752; *Ritchie v. Eberhart*, 11 F.3d 587, 591-92 (6th Cir. 1993); *Gentry v. Trippett*, 956 F. Supp. 1320, 1326 (E.D. Mich. 1997).

Petitioner argues in his reply that inadequacies in the legal writer program at the prison in which he was incarcerated made compliance with the exhaustion requirement impossible, constituting cause for his default.  This argument is without merit.  First, petitioner was able, despite the alleged inadequacies, to file an application for leave to appeal in the Michigan Supreme Court. It would have been a simple matter to have included all six issues raised in the court of appeal in that application, yet petitioner chose not to do so.  Petitioner does not explain how any alleged inadequacies in the prison assistant program rendered him unable to raise his fourth through sixth claims when he was able to raise his first three claims.  Moreover, even if petitioner could make such a showing, it would not suffice to establish cause for his default.  A petitioner's "pro se status and his corresponding lack of awareness and training on legal issues do not constitute adequate cause" to excuse a procedural bar.  *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991); *see also*, *Haley v. United States*, 78 F.3d 282, 285 (7th Cir. 1996); *McCowin v. Scott*, 67 F.3d 100, 101-02 (5th Cir. 1995); *Charron v. Gammon*, 69 F.3d 851, 859 (8th Cir. 1995); *Lewis v. United States*, No. 96-3092, 1997 WL 49028, at *3 (6th Cir. Feb. 4, 1997) (per curiam).  Petitioner's allegation that the legal assistant program was inadequate is insufficient to establish cause in the absence of any indication that petitioner lacked access to an adequate law library or otherwise was denied meaningful access to the courts.  *See Taylor v. McKee*, 649 F.3d 446, 452-53 (6th Cir. 2011). Accordingly, the Court should conclude that petitioner has failed to establish cause for his procedural default.

*b. Prejudice*

Because petitioner must establish both cause and prejudice, his failure to establish cause makes it unnecessary to consider the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Nevertheless, as noted below even if petitioner could establish cause, he cannot establish prejudice because his claims are without merit. *See Nunn v. Yukins*, No. 98-2309, 2000 WL 145378, at *1 (6th Cir. Feb. 4, 2000) (no prejudice where defaulted claims were meritless); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994) (same); *Alvarez v. Straub*, 64 F. Supp. 2d 686, 696 (E.D. Mich. 1999) (Rosen, J., adopting Report & Recommendation of Komives, M.J.) (same).

In his fourth claim, petitioner contends that counsel was ineffective for failing to investigate and call exculpatory witnesses, in particular alibi witnesses. As explained more fully below, *see infra* part J.1, in order to succeed on an ineffective assistance of counsel claim petitioner must show both that counsel's performance was deficient, and that he was prejudiced by counsel's performance in that there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. Here, petitioner cannot make this showing. As the Michigan Court of Appeals observed, any alibi defense would have been futile. Petitioner was caught at the scene, and did not deny being in the car. The issue at trial was not his presence, but rather his involvement in the crime. *See Whorton*, 2007 WL 4125315, at *5. Further, petitioner has not identified, either here or in state court, the supposed alibi witnesses counsel should have investigated nor has he presented any evidence, through affidavit or otherwise, that any exculpatory witness existed and was willing to testify at trial. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the

13

burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

Petitioner also contends in his fourth claim that counsel was ineffective for failing to suppress his statement to the police and for failing to move to dismiss some of the firearms charges on double jeopardy grounds. As explained in part E, *infra*, counsel in fact moved to suppress petitioner's statement. Further, as explained in that section, petitioner's underlying claim that the confession was inadmissible is without merit, and thus he cannot show that counsel was ineffective. With respect to the double jeopardy issue, the underlying double jeopardy claim which forms petitioner's fifth habeas claim is without merit, and thus counsel's failure to object does not amount to ineffective assistance.

With respect to that underlying double jeopardy claim, petitioner contends that his conviction on Count 3 for felon in possession of a firearm, and his conviction on Count 4 for possessing a firearm during the commission of a felony with the felon-in-possession charge constituting the predicate felony, violates the Double Jeopardy Clause. This argument is without merit. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections:

14

"[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.

The statute at issue here is the felony firearm statute, which imposes a mandatory

consecutive two year term of imprisonment when applicable.  That statute provides:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223 [unlawful sale of a firearm], section 227 [carrying a concealed weapon], 227a [unlawful possession of a firearm by a licensee] or 230 [alternation of identifying marks on a firearm], is guilty of a felony, and shall be imprisoned for 2 years.

MICH. COMP. LAWS § 750.227b(1).  The Michigan Supreme Court, in light of the language of this section and the legislative history, has concluded that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute."  *People v. Mitchell*, 456 Mich. 693, 698, 575 N.W.2d 283, 285 (1998).  Although *Mitchell* did not involve a felon in possession charge as the underlying felony, its interpretation of the legislative intent is equally applicable to the felon in possession charge.  Thus, "[b]ecause [petitioner]'s felon in possession charge unquestionably does not constitute one of the explicitly enumerated exceptions to the felony-firearm statute, . . . the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count."  *People v. Dillard*, 246 Mich. App. 163, 167-68, 631 N.W.2d 755, 758 (2001) (per curiam); *accord People v. Weems*, No. 232009, 2001 WL 1324693, at *1 (Mich. Ct. App. Oct. 26, 2001) (memorandum); *People v. Lindsey*, No. 223842, 2001 WL 1134637, at *1 (Mich. Ct. App. Sept. 21, 2001) (memorandum).  Because the Michigan Legislature intended to impose multiple punishments in this situation, there was no double jeopardy violation.

Finally, in his sixth claim, petitioner contends that he was denied a fair trial when the jury was permitted to consider evidence that was never properly admitted.  As the Michigan Court of Appeals observed, however, after the prosecution rested its case, it moved to reopen the proofs to

16

admit several exhibits that the trial court had realized were not entered into evidence.  Thus, the exhibits were ultimately admitted into evidence, and were therefore proper subjects of the jury's deliberations.  To the extent petitioner contends these exhibits were improperly admitted, this is a matter of state evidentiary law which, as discussed more fully below, *see infra* part F, is not cognizable on habeas review.

Because each of petitioner's defaulted claims is without merit, the Court should conclude that he cannot establish prejudice, even if he could establish cause.

   3.    *Fundamental Miscarriage of Justice*

Under a second exception, known as the "fundamental miscarriage of justice" exception, petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation omitted).

Here, petitioner does not present any new reliable evidence that he is factually innocent of the charges against him.  *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").  Thus, he has failed to establish that application of the procedural bar will result in a miscarriage of justice.  Accordingly, the Court should conclude that petitioner's fourth, fifth,

and sixth habeas claims are barred by his procedural default in the state courts.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

18

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Involuntary Statement (Claim I)*

Petitioner first contends that the introduction of his statements to the police denied him of a fair trial because his statements were coerced.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.[4]

1.    *Clearly Established Law*

As the Supreme Court explained in *Jackson v. Denno*, 378 U.S. 368 (1964), "a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession."  *Jackson*, 378 U.S. at 376.  "Determining whether a confession is 'voluntary' for due process purposes entails an examination into the 'totality of the circumstances' to determine whether the confession was procured by acceptable techniques that draw upon an essentially free and unconstrained choice or

---

[4]Respondent, relying on *Stone v. Powell*, 428 U.S. 465 (1970) argues that this claim is not cognizable on habeas review.  This argument is without merit.  In *Stone*, the Court held that because the Fourth Amendment exclusionary rule is a prophylactic device that would have little utility when applied on collateral review, a Fourth Amendment claim is not cognizable on habeas review so long as the petitioner had a full and fair opportunity to litigate the claim in state court.  *See Stone*, 428 U.S. at 482.  This rule extends to a claim that a statement taken from a petitioner violates the Fourth Amendment because it was the fruit of an illegal arrest.  *See Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).  Petitioner, however, does not contend that his statement should have been suppressed as the fruit of an illegal arrest under the Fourth Amendment.  Rather, petitioner claims that his confession was involuntary, in violation of the Due Process Clause.  Such a claim is not barred by the *Stone* rule.  *Cf. Withrow v. Williams*, 507 U.S. 680, 683, 688-95 (1993) (*Stone* rule did not bar claim that confession was taken in violation of Fifth Amendment privilege against self incrimination); *Cardwell*, 461 U.S. at 573 (holding that *Stone* barred claim that confession was inadmissible as fruit of illegal search, and explaining that "[o]nly if the statements were involuntary, and therefore in violation of the Fifth Amendment, could the federal courts grant relief on collateral review.").

by unacceptable tactics that extract their results from an overborne will.  The critical line of distinction is between 'self-direction' and 'compulsion.'" *Cooper v. Scroggy*, 845 F.2d 1385, 1390 (6th Cir. 1988) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)); *accord Dickerson v. United States*, 530 U.S. 428, 434 (2000).  It is not enough that a defendant's will was "overborne" by some factor for which state officials are not responsible.  "Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession." *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).  There is no bright line test for determining whether a confession is voluntary, nor is any one factor dispositive.  Rather, a court must "look[] to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case.  Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishments, such as the deprivation of food or sleep." *United States v. Mahan*, 190 F.3d 416, 422-23 (6th Cir. 1999) (internal quotation and citation omitted); *accord*, *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

For purposes of habeas review, "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a [legal] matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  However, a state court's findings of historical fact are presumed by this Court to be correct unless rebutted by petitioner with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  *See generally*, *Townsend v. Sain*, 372 U.S. 293, 309 n.6

(1963) (factual findings entitled to a presumption of correctness under the habeas statutes are those relating to "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.") (internal quotation omitted). Thus, "subsidiary factual questions, such as whether . . . in fact the police engaged in the intimidation tactics alleged by the defendant are entitled to the § 2254[(e)(1)] presumption." *Miller*, 474 U.S. at 112; *see also*, *id*. at 117.

2.      *Analysis*

Petitioner contends that his statements were involuntary because they were coerced by promises of leniency and threats of violence. Prior to the start of trial, the court held an evidentiary hearing on petitioner's motion to suppress, the testimony at which was accurately summarized in the prosecutor's brief to the Michigan Court of Appeals:

> At the hearing, held on the first day of trial, Detective Helgert testified that, prior to interrogating Defendant, he presented him, both orally and in writing, his five enumerated *Miranda* rights. A copy of those rights, signed and initialed by Defendant, was admitted as an exhibit. Included among those rights were the right to remain silent, the right to an attorney and the right to cease questioning any time. Defendant signed the document, waiving those rights. In addition, Detective Helgert questioned Defendant on his education level, if he was sick or on any type of medication, drugs or alcohol and asked him if he wanted breakfast or water.
>
> Detective Helgert was asked if Defendant appeared to be under the influence of anything. The detective indicated that Defendant was not under the influence of anything and that he "absolutely" appeared to understand the questions that were posed to him. He indicated that the interrogation took place of the course of about an hour and a half and that it occurred just after noon on the day following the robbery. The interview was conducted in the interview room of the Southfield Police Department's Detective Bureau. Detective Helgert testified that they did not threaten Defendant, nor beat him, nor withhold any type of medical treatment.
>
> On cross examination, Detective Helgert testified that Defendant never requested an attorney but that he did ask to take a polygraph and have a lineup done. At no time did Defendant ever indicate that he wanted to terminate the questioning and the only thing that the detective told him about things being easier for him if he made a statement was that he should be truthful and show remorse for his behavior. The detective never indicated that he would receive any benefit from making a statement or that his sentence would be lighter if he confessed.
>
> According to Detective Helgert's testimony, Defendant was not told that he

22

could leave if he made a statement or promised any type of leniency in exchange for a confession. Detective Helgert also denied that he made any kind of statement that he (the detective) would tell other inmates that Defendant was involved in a CSC or that he made any other threats whatsoever. The detective testified that Defendant asked him if he could put in a good word with his superiors, the prosecutor and judge, and the officers gave Defendant a piece of paper and told him that he should write a letter to whomever asking for leniency. Detective Helgert testified that there was no intimidation of any kind involved.

Defendant, on the other hand, testified that his interview took place early in the morning after he had been in custody for about three or four hours. He testified that when he first met Detective Helgert, he immediately asked for a lawyer and was told by the detective that "you can't afford no lawyer and that you don't have a right to a lawyer." Defendant testified that he kept yelling and screaming for a lawyer, a polygraph and a lineup but that Detective Helgert said that Defendant was lying. Defendant admitted that he signed and initialed the advice of rights form but that he wanted to speak to a lawyer even though the detective made him write "no" where the form asked if he wanted a lawyer. He claimed that he did not waive his rights because he did not understand the form and the questions and that Detective Helgert was the one telling him how to answer the questions.

When asked if either Detective Helgert or Detective Dowling made any specific threats to him, Defendant testified that Detective Dowling kicked his chair and pushed his head. After he was kicked and pushed, Detective Helgert told Defendant that if he did not confess, they would tell other prisoners at the Southfield jail that Defendant was in for CSC and that they "was going to beat my ass." Defendant also testified that the detectives told him that if he wrote a statement, which he still did not understand, the judge and the prosecutor would go easier on him. He testified that Detective Helgert was screaming at him and was upset because Defendant was not comprehending what he was trying to say. He testified that it was the detectives who told him to write that he was an aider and abettor and that he acted as the lookout. Defendant testified again that he asked for a lawyer, that he wanted the interview taped and that he asked for the interview to be terminated.

On cross examination, Defendant testified that he had previously been arrested for a larceny from an automobile but that he was never read his rights because he "went to court." He indicated that they gave him a lawyer in court and that he just got probation. He also testified that he was advised of his rights and that he knew what it meant when he was told that he had the right to remain silent. Defendant testified that when he was told that he had the right to a lawyer, he said he wanted one but that the detective told him that he could not afford one and that he did not have a right to one. He indicated that he only initialed next to the right because the detective told him to do it.

Defendant admitted that he wrote a letter to the judge, which was admitted as an exhibit, and acknowledged that he did not write in that letter that he was denied his right to a lawyer. Although he acknowledged writing the letter to the judge, Defendant testified that he never had the chance to tell the judge that he was denied

a lawyer. Defendant further admitted that he could have refused to write the letter to the judge. On re-direct, Defendant indicated that the only reason he wrote the letter to the judge and agreed to cooperate during the interview was because the detectives threatened him.

*Pl.-Appellee's Br. on Appeal*, in *People v. Whorton*, No. 270607 (Mich. Ct. App.), at 2-5 (citations to transcript omitted) (footnote omitted).

The trial court denied petitioner's motion, accepting the officer's testimony and finding that the circumstances did not indicate any coercion. *See* Trial Tr., Vol. I, at 53-56. The Michigan Court of Appeals affirmed, reasoning:

> Defendant was 22 years old, had an eleventh grade education, and signed the constitutional rights forms. He was not sick or under the influence of drugs or alcohol, and he declined food and water. The interrogation lasted 90 minutes, and defendant was interrogated within hours of his arrest. Defendant had one previous arrest and conviction, and he requested a lineup and polygraph examination, which shows his level of sophistication and experience with the police. The only evidence offered in support of defendant's assertions that he was coerced and denied his right to counsel are his own statements. The police, however, testified that there was no coercion, and the trial court, which is in the best position to evaluate credibility, resolved this credibility question in favor of the police.

*Whorton*, 2007 WL 4125315, at *2. The Court should conclude that this determination is reasonable.

The trial court was in the best position to observe the demeanor of the witnesses and hear their testimony, and as noted above the trial court's factual findings are presumed correct. Petitioner has failed to offer any clear and convincing evidence to rebut the trial court's conclusion that petitioner's account of the interrogation was not credible, as required by § 2254(e). Because petitioner makes no argument that his confession was involuntary under the version of events testified to by the officers and accepted by the trial court, petitioner cannot show either that the state courts' resolution of this claim was an unreasonable application of clearly established law under §

24

2254(d)(1), or that it was based on an unreasonable determination of the facts under § 2254(d)(2). *See Sok v. Spencer*, 578 F. Supp. 2d 281, 292 (D. Mass. 2008) (state trial court's crediting of officers' testimony over that of petitioner "effectively dooms [petitioner's] habeas challenge to the admissibility of his confession."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Other Acts Evidence (Claim II)*

Petitioner next contends that he was denied a fair trial by the introduction of other acts evidence. During trial the prosecutor asked Detective Helgert if the property taken during the robbery had been returned to the rightful owners. Detective Helgert responded:

> The property wasn't returned; however, there had been a piece of identification found in the vehicle. Initially we viewed that as a potential identification of a fourth suspect and in fact, as I came to talk to one of the people who had property in the car, was a victim of the street robbery, they identified that person as her companion that night.

Trial Tr., Vol. II, at 426. The prosecutor did not question Detective Helgert further on this issue. The Michigan Court of Appeals rejected petitioner's claim that he was denied a fair trial by this response, reasoning that the response was unresponsive to the prosecutor's questions and was vague as to whether it was referring to the robbery for which petitioner was on trial or some other robbery. *See Whorton*, 2007 WL 4125315, at *3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, unless a violation of a state's evidentiary rule results

25

in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have

repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). In short, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *Bugh*, 329 F.3d at 512, and thus petitioner is not entitled to habeas relief on this claim.

Further, petitioner cannot show that this evidence deprived him of a fair trial. There was strong evidence against petitioner, including an identification from one of the victims, the observations of the police seeing him flee from the car and their subsequent arrest of him at the scene, the recovery of cell phones and credit cards from petitioner at the time of his arrest, and his own statements to the police. As the court of appeals observed, Detective Helgert's statement was unsolicited, and was brief in the context of the trial. The prosecutor did not question Detective Helgert further on the matter, nor did the prosecutor reference the matter at any other point during the trial. Finally, again as observed by the court of appeals, the statement itself is vague as to whether Detective Helgert was referring to another victim of the robbery for which petitioner was on trial, or was instead referring to a different robbery. In these circumstances, petitioner cannot show that he was denied a fair trial by the introduction of this evidence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Sufficiency of the Evidence (Claim III)*

Petitioner next contends that the prosecution presented insufficient evidence to prove his

guilt beyond a reasonable doubt on the resisting arrest and stealing a financial transaction device charges.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor

28

of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Id*. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

2. *Analysis*

a. *Resisting/Obstruction*

Petitioner first argues that the prosecution presented insufficient evidence to support his conviction on the resisting or obstructing a police officer conviction. Michigan's resisting arrest statute provides, in relevant part: "[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his

or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of

not more than $2,000.00, or both." MICH. COMP. LAWS § 750.81d(1). The statute defines "person"

to include, *inter alia*, police officers, *see id*. § 750.81d(7)(b)(I), and defines "obstruct" as, *inter alia*,

a knowing failure to comply with an officer's command, *see id*. § 750.81d(7)(a). Thus,

> [u]nder MCL 750.81d(1), the elements required to establish criminal liability are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. "'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

*People v. Corr*, 287 Mich. App. 499, 503, 788 N.W.2d 860, 863 (Mich. Ct. App. 2010) (citations

omitted).

Petitioner contends that the evidence was insufficient to show that he intended to resist the

officers. However, the Michigan Court of Appeals rejected this claim because intent is not an

element of the crime. The court explained that "the statute contains no mention of a knowing and

willful intent to resist arrest." *Whorton*, 2007 WL 4125315, at *4. Rather, as the *Corr* court

explained, all that is required is that the defendant have committed one of the prohibited acts (*i.e.*,

assault, obstruct, &c.) while the defendant knew or had reason to know that the person was a police

officer performing his or her duties. Here, petitioner's arrest came about after a police chase, and

there was "no dispute that the arresting officers were dressed in full uniform at the time of arrest."

*Id*. Thus, the evidence was sufficient to show that petitioner knew or had reason to know that the

officers were law enforcement officers performing their duties. Further, there was sufficient

evidence to show that petitioner "obstructed" the officers within the meaning of the statute.

Sergeant Porter and Officer LaBrosse both testified that petitioner would not place his hands behind

his back to be handcuffed, in defiance of the officers' commands, and that he struggled with them, resisting their attempts to handcuff him and place him in a police car. *See* Trial Tr., Vol. II, at 314-15, 354-56, 380. This testimony was sufficient to prove beyond a reasonable doubt that petitioner obstructed the officers by failing to comply with their commands.

Petitioner also argues that the evidence was insufficient because the officers gave conflicting accounts about the circumstances of the arrest. This argument is without merit. It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). The *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the officers' testimony, the jury's verdict does not "fall below the threshold of bare rationality." *Id.* at 2065. Accordingly, the Court should conclude that petitioner is not entitled to

31

habeas relief on this claim.

### b. *Stealing/Retaining Financial Transaction Device*

Petitioner also contends that the prosecution presented insufficient evidence to establish his guilt on the financial transaction device charge. The relevant statute provides that a "person who . . . . knowingly retains, knowingly possesses, knowingly secretes, or knowingly uses a financial transaction device without the consent of the deviceholder, is guilty of a felony." MICH. COMP. LAWS § 750.157n(1). At trial, Sergeant Porter testified that after petitioner was placed under arrest he patted-down petitioner, and found among other items several credit cards. *See* Trial Tr., Vol. II, at 316. Officer LaBrosse testified that the pat-down of petitioner yielded three credit cards in the names of Eva S. Williams, Eva S. Dorsey Williams, and Eva S. Dorsey, and photocopies of the cards were admitted into evidence. *See id.* at 356-57. Further, the parties stipulated that "no one had permission to possess Eva Dorsey Williams' credit and/or debit cards." *Id.*, Vol. III, at 476. This evidence was clearly sufficient to prove that petitioner knowingly possessed these credit cards without the consent of the cardholder. In arguing to the contrary, petitioner points to the testimony of Officer Damon Bryant, who initially testified that he believed the credit cards were found in the vehicle, not on petitioner's person. *See id.*, Vol. II, at 383-85.[5] As noted above, however, this merely presented a credibility contest which it was the province of the jury to resolve. The jury was free to credit the testimony of Sergeant Porter and Officer LaBrosse over the conflicting testimony of Officer Bryant, and if believed by the jury their testimony was sufficient to establish the elements of the offense beyond a reasonable doubt. Accordingly, the Court should conclude that petitioner

---

[5]Officer Bryant was subsequently recalled, and testified that his report indicated that the cards were in fact found on petitioner. However, because Bryant could not himself remember whether the cards were recovered from petitioner's person, the court struck this rebuttal testimony. *See* Trial Tr., Vol. III, at 518-20, 533-34.

is not entitled to habeas relief on this claim.

H.     *Jury Instructions (Claim X)*

Petitioner next argues that he was denied a fair trial by an incorrect jury instruction.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).  Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal).  As the Supreme Court has noted, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Further, court conducted habeas review should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

2.    *Analysis*

Petitioner contends that he was denied a fair trial when the trial court began to instruct the jury regarding the use of prior convictions.  During the general instructions to the jury, the court began:

> There is evidence that the defendant has been convicted of a crime in the past. You may consider that evidence only in deciding whether you believe – whether you believe the – thank you.

Trial Tr., Vol. IV, at 598.  The court then held an off the record conference with counsel, and returned with the following instruction: "All right.  You're going to disregard – you're going to disregard that last instruction and start over." *Id*.  As petitioner rightly notes, the initial instruction was improper because there was no evidence of a prior conviction admitted for impeachment purposes, as petitioner did not testify.  However, petitioner fails to explain how he was denied a fair trial by this instruction.  There was no evidence presented at trial that petitioner had been convicted of a crime, and the instruction did not refer to any particular crime.  Further, the court immediately realized its error, and instructed the jury to disregard the instruction regarding prior convictions.  In light of these circumstances and the overwhelming evidence of petitioner's guilt, petitioner cannot show that the instruction deprived him of a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Sentencing Claims (Claims VIII & XII)*

Petitioner next raises several challenges to his sentence.  In Claim VIII, petitioner contends that his sentencing guidelines were mis-scored and that he was sentenced in reliance upon materially false information.  In Claim XII he contends that equal protection requires that he be resentenced to benefit from changes in Michigan sentencing law occurring after he was sentenced.  Finally, in

his reply brief petitioner argues that his sentence was inappropriately based on facts found by the judge rather than the jury.  The Court should conclude that petitioner is not entitled to habeas relief on these sentencing claims.

      1.     *Guidelines Scoring*

With respect to the scoring of the guidelines, petitioner's claim is not cognizable on habeas review.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).  Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

      2.     *Inaccurate Information*

Petitioner next claims that his sentence was based on inaccurate information.  Specifically, petitioner contends that the court erred in scoring Prior Record Variable 4 (PRV) at 5 points because

35

he did not have three prior low severity juvenile adjudications, erred in scoring PRV 5 at 2 points because the misdemeanor conviction upon that scoring was based was without benefit of counsel, and erred in scoring Offense Variable 4 (OV) at 10 points because there was no evidence of psychological injury to any of the victims.

In *Townsend v. Burke*, 334 U.S. 736 (1948), the Supreme Court held that it violates a criminal defendant's right to due process to sentence the defendant "on the basis of assumptions concerning his criminal record which were materially untrue." *Id*. at 741. In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Court held that the Sixth Amendment right to counsel makes it "unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one." *Burgett v. Texas*, 389 U.S. 109, 114 (1967). In *Burgett* the Court extended its holding in *Gideon*, concluding that a conviction obtained in violation of *Gideon* cannot be used to either support guilt or enhance punishment for another, subsequent offense. *See Burgett*, 389 U.S. at 115. Extrapolating from both *Townsend* and *Gideon/Burgett*, the Court held in *United States v. Tucker*, 404 U.S. 443 (1972), that a sentencing court's reliance on convictions which are "wholly unconstitutional under *Gideon*" results in a "sentence founded at least in part upon misinformation of a constitutional magnitude" of the type prohibited by *Townsend*. *Tucker*, 404 U.S. at 447. Thus, "[w]hen an otherwise qualified § 2254 petitioner can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, the current sentence cannot stand and habeas relief is appropriate." *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 404 (2001).

Turning first to petitioner's challenge to OV-4, petitioner cannot show that his sentence as based on any materially false factual information. Petitioner argues that there was not sufficient

evidence to support a finding that any of the victims suffered psychological injury under OV-4. *See* MICH. COMP. LAWS § 777.34  This argument, however, does not assert reliance on any materially false *factual* assumptions made by the trial court.  Rather, it is an argument directed at the legal effect given to the facts by the trial court.  And, as noted above, the legal sufficiency of the facts to support a scoring of OV-4 is a question of state law which is not cognizable on habeas review. Further, the trial court's drawing of permissible inferences based on the established facts is insufficient to establish that petitioner was sentenced on the basis of material false information in violation of his right to due process under *Townsend* and *Tucker*.  As the Court made clear in *Townsend*, an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741.  "Thus, what is essential is that the sentencing judge decide upon the sentence after being made aware of all exculpatory evidence and of the defendant's version of the story." *United States v. Von Saltzer*, 532 F. Supp. 584, 586 (D. Nev. 1982).  The trial judge, based on the information available, drew inferences from the facts and made factual findings.  While petitioner disputes those findings, he has offered nothing to show that they were materially false. Thus, he has failed to establish a due process violation under *Townsend*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

This, in turn, compels a finding against petitioner with respect to his challenge to the PRV scores.  Petitioner was convicted of armed robbery, which is a Class A felony for purposes of the

sentencing guidelines, *see* MICH. COMP. LAWS § 777.16y, subjecting him to the guideline grid found in MICH. COMP. LAWS § 777.62.  According to petitioner, his score as calculated by the trial court put him in PRV category D, and OV category IV, yielding a range of 126-210 months for the minimum term of imprisonment.  Petitioner contends that had the guidelines been properly scored, he would have been in category D-III, yielding a guideline range of 108-180 months.   By petitioner's own account, only the allegedly improper scoring of OV 4 affected his sentence, moving him from OV category III to OV category IV.  Under petitioner's argument, even if the two prior record variables were changed, he would still be in PRV category D, rendering any error in the scoring harmless.  Further, any error was harmless because petitioner's minimum term of imprisonment of 11½ years (138 months) falls within what petitioner contends is the appropriate guideline range.  *See Coleman v. Harry*, No. 1:07-cv-465, 2010 WL 1052713, at *8 (W.D. Mich. Feb. 26, 2010); *Thornton v. White*, No. 07-14035, 2009 WL 4506441, at *5 (E.D. Mich. Nov. 30, 2009) (Ludington, J.).

Petitioner's challenge to the PRV scores fails on other bases as well.  Although petitioner asserts in conclusory fashion that he did not have three prior low severity juvenile convictions and that his juvenile misdemeanor conviction was without the benefit of counsel, he provides no information to evaluate this claim.  He does not identify the specific convictions at issue, or offer any evidence or argument in support of his conclusory claim.  It is petitioner's burden to show that the prior convictions did not exist, or both that he was without counsel at the time of his misdemeanor plea and that the presence of counsel was not validly waived.  *See Hobson v. Robinson*, 27 Fed. Appx. 443, 445 (6th Cir. 2001) (citing *Parke v. Raley*, 506 U.S. 20, 28-34 (1992)).  A petitioner's "conclusory allegation is not a basis for granting an evidentiary hearing" or

habeas relief. *Brown v. Tyszkiewicz*, No. 99-CV-73027, 2000 WL 1480892, at *8 (E.D. Mich. Aug. 31, 2000) (Borman, J.); *see also*, *Hobson*, 27 Fed. Appx. at 445; *United States v. Joost*, 92 F.3d 7, 14 (1st Cir. 1996). Here, petitioner offers nothing to show that any of his convictions was taken in the absence of a valid waiver of the right to counsel, beyond his own conclusory allegation.

Further, with respect to the allegedly uncounseled conviction forming the basis of the scoring of PRV 5, even if this conviction affected petitioner's sentencing guidelines (which, as explained above, it did not), the conviction did not expose him to an increased sentencing range. The Supreme Court has never held that previous uncounseled misdemeanor convictions can never be used in determining an appropriate sentence. In *Baldasar v. Illinois*, 446 U.S. 222 (1980) (per curiam), the Court held only that a previous uncounseled misdemeanor conviction may not "be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term." *Id*. at 222 (per curiam); *see also*, *id*. at 224 (Stewart, J., joined by Brennan and Stevens, JJ., concurring) (use of previous uncounseled conviction improper where defendant is "sentenced to an increased term of imprisonment *only* because" of that conviction) (emphasis in original); *id*. at 228 (Marshall, J., joined by Brennan and Stevens, JJ., concurring) (uncounseled misdemeanor conviction "remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute."). As a number of courts have explained, "the holding of *Baldasar* is limited to prohibiting the elevation of a misdemeanor to a felony by reason of an uncounseled conviction [.]" *United States v. Falesbork*, 5 F.3d 715, 718 (4th Cir. 1993); *see also*, *United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993). As the Eighth Circuit has aptly explained:

> We believe that *Baldasar* prevents a constitutionally valid but uncounseled prior conviction from being used in a subsequent sentencing proceeding to imprison a defendant when he would not otherwise be confined. We further are of the view that *Baldasar* has no application in a case (as here) where the prior uncounseled

39

conviction played no part in determining the defendant's guilt of the subsequent offense, and where (as here) a sentence to imprisonment is already required to be imposed for the subsequent offense without regard to the prior conviction, and where (as here) the court is faced only with determining the length of the imprisonment already authorized by the statute for the subsequent offense. Stated another way, under *Baldasar*, one cannot be sent to jail because of a prior uncounseled misdemeanor conviction, either upon the initial conviction or because of the conviction's later use in a subsequent sentencing, but if the subsequent sentence to imprisonment is already required as a consequence of the subsequent crime, the prior conviction may be used as a factor to determine its length.

*United States v. Thomas*, 20 F.3d 817, 823 (8th Cir. 1994) (en banc). For these reasons, the Court

should conclude that petitioner is not entitled to habeas relief on his inaccurate information claim.

3.     *Equal Protection*

Petitioner next contends that resentencing is required by the Equal Protection Clause based

on the trial court's assessing of 15 points under OV-19 for petitioner's interference with or attempt

to interfere with the administration of justice. *See* MICH. COMP. LAWS § 777.49(c). Petitioner

concedes that, under the law existing at the time of his sentencing and appeal, both fleeing and

resisting arrest constituted interference with the administration of justice supporting a score under

OV-19. *See People v. Barbee*, 470 Mich. 283, 287-88, 681 N.W.2d 348, 350-51 (2004); *People v.

Cook*, 254 Mich. App. 635, 658 N.W.2d 184 (2003), *overruled in part on other grounds by People

v. McGraw*, 484 Mich. 120, 133 n.42, 771 N.W.2d 655, 663 n. 42 (2009). Petitioner contends,

however, that the law has changed and that his conduct in fleeing or resisting arrest no longer

supports a scoring under OV-19. Because people who engaged in the same conduct as petitioner

are no longer subject to such scoring, petitioner argues, equal protection requires that he be

resentenced without the 15 points assessed under OV-19. Petitioner's argument fails on two bases.

First, petitioner is incorrect that there has been any change in the law. In support of his

claim, petitioner relies on the Michigan Court of Appeals's unpublished decision in *People v. Gajos*,

40

No. 281344, 2008 WL 4892198 (Mich. Ct. App. Nov. 13, 2008) (per curiam) ("*Gajos I*"), *opinion on reconsideration*, 2009 WL 250628 (Mich. Ct. App. Feb. 3, 2009) ("*Gajos II*").  According to petitioner, in *Gajos* the court held that "[u]nder Michigan Statute MCL 777.49(c) the trial court must not score under the old ruling of *People v. Barbee, supra*."  Pet'r's Delayed Application for Leave to Appeal, at 36 (attached as a brief to petitioner's habeas application).  No such holding, however appears in either the initial or reconsideration opinion in *Gajos*.  In its initial opinion, the court of appeals distinguished *Barbee*, and held that simply fleeing the scene of a crime, without more (such as disobeying an order to stop or providing false information), does not constitute interference under OV-19.  *See Gajos I*, at *1-*2.  The court of appeals reached the same conclusion on reconsideration.  *See Gajos II*, at *1-*2.  Nothing in *Gajos* calls into question the continuing validity of *Barbee* nor could it; the Michigan Court of Appeals lacks authority to overrule decisions of the Michigan Supreme Court.  And the Michigan courts continue to apply the *Barbee* understanding of OV-19, as recently as last month.  *See, e.g.*, *People v. Briggs*, No. 305028, 2012 WL 4465167, at *1 (Mich. Ct. App. Sept. 27, 2012) (per curiam); *People v. Adams*, No. 304468, 2012 WL 2335328, at *2 (Mich. Ct. App. June 19, 2012) (per curiam); *People v. Saffold*, No. 304171, 2012 WL 1415793, at *1 (Mich. Ct. App. Apr. 24, 2012) (per curiam); *People v. Smith*, 488 Mich. 193, 201-02, 793 N.W.2d 666, 670-71 (2010).  Further, petitioner does not come within the distinction relied upon by the *Gajos* court.  Unlike the defendant in that case, petitioner did more than simply flee the scene of crime.  Rather, he engaged in a high speed chase with the police, ran when stopped, refused to comply with the officers' commands, and resisted the officers' attempts to both handcuff him and place him in the car.  The cases cited above demonstrate that such conduct supports a scoring under OV-19 notwithstanding *Gajos*.

41

Second, even if petitioner could establish that there has been a change in Michigan sentencing law which would affect his sentence if applied to the facts of his case, petitioner cannot show that he has been denied equal protection by the state courts' refusal to apply this change and resentence him. *Gajos* was decided on November 13, 2008. Petitioner's conviction became final over seven months earlier on March 24, 2008, when the Michigan Supreme Court denied his application for leave to appeal. The retroactivity of state decisions made with respect to state law is a matter of state concern, and "the federal constitution has no voice upon the subject." *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932). For this reason, "[t]he Supreme Court has held that the Constitution does not require a state's highest court 'to make retroactive its new construction of [a criminal] statute.'" *Henry v. Ricks*, 578 F.3d 134, 140 (2d Cir. 2009) (quoting *Wainwright v. Stone*, 414 U.S. 21, 23-24 (1973) (per curiam)) (alteration by quoting court). Simply put, even if *Gajos* represents a change in Michigan law, the state court's refusal to apply that decision retroactively in petitioner's case is a matter of state law and raises no equal protection or due process claim. *See Clay v. Bowersox*, 628 F.3d 996, 998 (8th Cir. 2011); *Henry*, 578 F.3d at 140; *Felton v. Mazzuca*, 98 Civ. 4567, 2012 WL 4462009, at *10 (S.D.N.Y. Sept. 27, 2012). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 4.    *Judicial Factfinding*

In his reply brief, petitioner contends that the trial court based its sentence on facts which were not proved by the prosecution beyond a reasonable doubt, in violation of the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court

considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the

United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not

prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which

increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely*

rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge
> may impose *solely on the basis of the facts reflected in the jury verdict or admitted
> by the defendant.*  In other words, the relevant "statutory maximum" is not the
> maximum sentence a judge may impose after finding additional facts, but the
> maximum he may impose *without* any additional findings. When a judge inflicts
> punishment that the jury's verdict alone does not allow, the jury has not found all the
> facts "which the law makes essential to the punishment," and the judge exceeds his
> proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v.*

*Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that

the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow

federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt.

*See Booker*, 543 U.S. at 233, 237-43.

     *Blakely* and *Apprendi*, however, are inapplicable here.  Michigan law provides for an

indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and

*Booker*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum

sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People*

*v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich.

715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8.  "[M]ichigan's

sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant).  As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence.  The maximum is, in every case, the statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge.  *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*.  The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which

is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris*

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial

factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan

Supreme Court have repeatedly held. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir.

2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Ineffective Assistance of Counsel (Claims VII-XI)*

Finally, petitioner contends that his trial and appellate counsel rendered constitutionally ineffective assistance in a number of respects.  In addition to the procedurally defaulted ineffective assistance claims discussed above, petitioner contends that trial counsel was ineffective for failing to: (1) object to hearsay testimony and raise a Confrontation Clause challenge to the testimony; (2) object to the use of erroneous information at sentencing; (3) use peremptory challenges to strike biased jurors; and (4) object to the trial court's erroneous jury instruction.  Petitioner also contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims petitioner raised in his motion for relief from judgment.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an

46

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with

47

the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.     *Trial Counsel*

a.  *Hearsay/Confrontation Challenge*

Petitioner first contends that counsel was ineffective for failing to challenge on both hearsay and Confrontation Clause grounds the testimony of Sergeant Michelle Kuzila, the prosecution's fingerprint expert.  Kuzila testified that she compared a latent fingerprint recovered from the driver's door of the vehicle to a known sample of petitioner's fingerprints, and found them to match.  That latent print had been recovered by Specialist Davis, an evidence technician.  *See* Trial Tr., Vol. III, at 482-90.  On cross-examination, Kuzila testified that Specialist Marage had done the actual processing for latent prints, but that she had done the comparison.  *See id*. at 502.  Petitioner contends that Kuzila's testimony concerning the actions of Davis and Marage constituted hearsay, and violated his right to confront Davis and Marage,  Petitioner argues that counsel was therefore ineffective for failing to object to this testimony.  The Court should reject this claim, because

48

Kuzila's testimony did not constitute hearsay, nor did it implicate the Confrontation Clause.

Under the Michigan Rules of Evidence, "'[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MICH. R. EVID. 801(c). Here, Kuzila did not testify to any statements made by Davis or Marage. Rather, she merely noted their actions in collecting and processing the evidence. The actions of Davis and Marage in performing their duties do not constitute "statements," and thus are not hearsay. Nor does Kuzila's testimony raise any Confrontation Clause issues. The introduction of "testimonial" hearsay statements–that is, out of court statements that are the functional equivalent of in-court testimony–violate a defendant's Sixth Amendment right to confront the witness against him, unless the hearsay declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). Out of court statements that do not amount to testimonial hearsay, however, raise no Confrontation Clause issues. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007). In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, constituted testimonial hearsay for Confrontation Clause purposes, and that such a report may not be introduced without the prosecution offering a live witness competent to testify to the truth of the report's statements. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2709 (2011) (discussing *Melendez-Diaz*, 557 U.S. at 310-11). In *Bullcoming* the Court clarified that under *Melendez-Diaz*, the prosecution may not present "surrogate" testimony by an analyst that did not sign the report or observe or perform the tests reflected in the report; rather, "[t]he accused's right is to be confronted with the analyst who made the certification." *Bullcoming*, 131 S. Ct. at 2710.

The situation present in *Melendez-Diaz* and *Bullcoming* was not present in petitioner's case. Kuzila did not relate anyone else's test results, nor did she testify about any test that she herself did not perform.  As her testimony indicates, she was the one who performed the latent fingerprint comparison.  The only testimony regarding Davis and Marage related to their actions in collecting and processing the evidence, not their analyses of the evidence.  Such testimony amounts to chain-of-custody evidence, and the Court made clear in both *Melendez-Diaz* and *Bullcoming* that such chain-of-custody testimony does not implicate the Confrontation Clause.  *See Bullcoming*, 131 S. Ct. at 2712 n.2; *Melendez-Diaz*, 557 U.S. at 311 n.1 ("Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.").  Because Kuzila's testimony did not "certify a test result" performed by the non-testifying technicians, and did not "opine as to the accuracy of [any] testing" performed by them or their "adherence to any testing protocol," her testimony did not run afoul of the Confrontation Clause.  *United States v. Tearman*, 70 M.J. 640, 642-43 (N-M Ct. Crim. App. 2012); *see also*, *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012).  Thus, any objection to this testimony on confrontation grounds would have been meritless, and counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

Further, even if the testimony would be barred under *Melendez-Diaz* and *Bullcoming*, petitioner cannot show that counsel was ineffective for failing to object at the time of trial. Petitioner was tried in early 2006, after *Crawford* but well before the Supreme Court's decision in

*Melendez-Diaz*.  It is well established that counsel's performance must be evaluated "as of the time of counsel's conduct,"  *Strickland*, 466 U.S. at 690, and therefore that counsel cannot be deemed ineffective for failing to anticipate a change in the law.  *See Nichols v. United States*, 501 F.3d 542, 545 (6th Cir. 2007); *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001).  At the time of petitioner's trial, the overwhelming majority of courts held that forensic reports did not constitute testimonial hearsay under *Crawford*.  *See Likely v. Ruane*, 681 F. Supp. 2d 107, 110 (D. Mass. 2010); *see also*, *Melendez-Diaz*, 557 U.S. at 330 (Kennedy, J., dissenting) (noting that the majority's holding was contrary to decision in "at least 35 states and six Federal Courts of Appeals.").  In light of the state of the law at the time of petitioner's trial, counsel cannot be deemed ineffective for failing to raise a *Melendez-Diaz* type challenge to Kuzila's testimony.  *See Hutchins v. Ryan*, CV 07-5796, 2011 WL 7429398, at *33 (Apr. 29, 2011), *magistrate judge's report adopted*, 2012 WL 528145 (C.D. Cal. Feb. 15, 2012); *Moorehouse v. DeCamp*, No. 09-980, 2010 WL 2367499, at *5 (May 21, 2010), *magistrate judge's report adopted*, 2010 WL 2367486 (D. Or. June 10, 2010).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Jury Selection

Petitioner next contends that counsel was ineffective for failing to exercise a peremptory challenge to excuse Juror No. 11.  During *voir dire*, Juror No. 11 indicated that he[6] had been the victim of an assault in 1983.  When asked by the court whether that experience would bias or prejudice him, Juror No. 11 responded, "I don't know."  The court followed up by asking whether Juror No. 11 could separate out his experiences from anything he heard in the courtroom, and Juror No. 11 responded, "I could separate."  Trial Tr., Vol. I, at 73-74.  Later, upon questioning by defense

---

[6]Nothing in the transcript indicates the juror's sex.  For simplicity, I use the male pronoun.

counsel, Juror No. 11 indicated that he understood petitioner's case was separate from the assault

on him, and indicated unequivocally (in defense counsel's words) that he could be fair.  *See id*. at

104-05.

Here, it is doubtful that petitioner can establish that trial counsel's performance was deficient

under the high standard applicable to ineffective assistance claims..  "[J]ury selection is a process

that inherently falls within the expertise and experience of trial counsel."  *Palacio v. State*, 511

S.E.2d 62, 67 (S.C. 1999) (citing cases).  Because of this, counsel's decisions in the jury selection

process are the type of strategic decisions which are particularly difficult to attack.  *See Romero v.

Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D.

Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science.

There is nothing unreasonable or professionally deficient in a defense counsel's informed decision

to rely upon his own reading of venire members' verbal answers, body language, and overall

demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998).  Here, petitioner has failed to offer anything to

show that counsel's decision to retain Juror No. 11 was anything other than a reasonable strategic

decision.

More importantly, even if petitioner could show that counsel's performance was deficient,

he cannot show that he was prejudiced by counsel's failure to exercise a peremptory challenge to

Juror No. 11.  In order to establish prejudice attributable to a counsel's failure to remove a juror, a

defendant must show that the juror was actually biased. *See Miller v. Francis*, 269 F.3d 609, 616

(6th Cir. 2001); *Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *Irons v. Lockhart*, 741

F.2d 207, 208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle

v. Calderon*, 919 F. Supp. 1367, 1389 (N.D. Cal. 1996).  Here, petitioner has failed to show that

Juror No. 11 was actually biased. The fact that Juror No. 11 may have been the victim of an assault over 20 years before petitioner's trial does not provide a basis for inferring that Juror No. 11 was biased. *See Gonzales v. Thomas*, 99 F.3d 978, 989-90 (10th Cir. 1996) (juror not presumed biased in rape case even though she had been the victim of a sexual assault 25 years prior to petitioner's trial); *see also*, *United States v. Gonzalez-Soberal*, 109 F.3d 64, 70 (1st Cir. 1997); *United States v. Gibbs*, 125 F. Supp. 2d 700, 708-09 (E.D. Pa. 2000), *aff'd*, 77 Fed. Appx. 107 (3d Cir. 2003). Further, Juror No. 11 indicated that he could separate the two cases and that he could be fair and impartial, assurances the Court must presume were truthful. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim). Thus, petitioner cannot show that he was prejudiced by counsel's failure to remove Juror No. 11. *See Southward v. Warren*, No. 2:08-CV-10398, 2009 WL 6040728, at *27-*28 (July 24, 2009) (Komives, M.J.) (trial counsel not ineffective for failing to seek removal of juror for cause who revealed after jury selection but prior to oral arguments that she had been the victim of a sexual assault many years prior to the trial, where there was no showing that the juror was actually biased), *magistrate's report adopted*, 2010 WL 233035 (E.D. Mich. Feb. 26, 2010) (Steeh, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. *Jury Instruction, Sentencing, and Prosecutorial Misconduct*

Petitioner also contends that his trial counsel was ineffective for failing to object to the trial

court's improper jury instruction and sentencing errors. As noted above, these underlying claims are without merit. It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Thus, petitioner cannot show that counsel was ineffective for failing to raise these objections.

With respect to the prosecutorial misconduct issue, petitioner contends that the prosecutor committed misconduct by stating, during closing argument and with respect to the financial transaction device charge, "I can tell you right now Eva Dorsey didn't give him permission for him to have [her credit cards]." Trial Tr., Vol. III, at 559. Petitioner contends that this amounted to the prosecutor providing testimony regarding hearsay statements made to him by Dorsey. Petitioner's argument, however, fails to account for the fact that the parties stipulated that "no one had permission to possess Eva Dorsey Williams' credit and/or debit cards." *Id*. at 476. Where the parties stipulate to material facts, those facts are deemed conclusively admitted. *See Christian Legal Society Chapter of the Univ. of Cal. v. Martinez*, 130 S. Ct. 2971, 2983 (2010); *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976) (per curiam). Because the parties' stipulation conclusively established that petitioner did not have Dorsey's permission to possess her credit cards, the prosecutor's statement was an accurate summary of the evidence, and did not constitute misconduct. Thus, counsel was not ineffective for failing to object to this statement.

    3.    *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims that petitioner raised in his state court motion for relief from judgment. In the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability

54

that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, each of petitioner's underlying claims are without merit, and thus petitioner cannot show that he was prejudiced by counsel's failure to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

deserve encouragement to proceed further.'''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding petitioner's habeas application, the Court

should also deny petitioner a certificate of appealability.  It is beyond doubt that petitioner failed to

raise his fourth through sixth claims in the Michigan Supreme Court, and that because he no longer

has any avenue to raise these claims his failure to exhaust has become a procedural default of those

claims.  It is also clear that petitioner asserts no cause for his failure to do so, and that the claims are

without merit.  Thus, the conclusion that petitioner's fourth through sixth claims are barred by

petitioner's procedural default is not reasonably debatable.  With respect to petitioner's involuntary

statement claim, it is clear that petitioner has presented no argument that his statement was

involuntary under the officers' version of events, and has presented no clear and convincing

evidence to rebut the state courts' acceptance of that version of events.  Thus, the resolution of his

claim is not reasonable debatable.  For the reasons explained above, it is likewise not reasonably

debatable that petitioner has failed to show that he was denied a fair trial by the introduction of other

acts evidence or by the trial court's initially incorrect, but corrected, jury instruction.  With respect

to petitioner's sufficiency of the evidence claim, it is not reasonably debatable that the testimony of

the officers was sufficient to establish the elements of the resisting and financial transaction device

convictions, and that any inconsistencies in their testimony does not render the evidence insufficient.

It is not reasonably debatable that petitioner has failed to show that his sentence was impermissibly

based on materially false information, that the sentencing guidelines claim presents a noncognizable

issue of state law, that equal protection does not require resentencing, and that *Apprendi* does not

apply to Michigan's indeterminate sentencing scheme.  Finally, for the reasons explained above, the

resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable.

Accordingly, the Court should deny petitioner a certificate of appealability.

L.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law.  Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 10/26/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and   by electronic means or U.S. Mail on October 26, 2012.

s/Eddrey Butts
Case Manager